SNOW'S UNITED STATES SAMPLE EXPRESS CO. *v.* UNITED STATES (No. 1777).[1]

1. CONSTRUCTION, PARAGRAPHS 253 AND 266, TARIFF ACT OF 1913—ARTICLES MADE FROM COTTON CLOTH.

   To become an article made from cotton cloth within the meaning of paragraphs 253 and 266, the cloth, whether in the piece or not, must have been so dealt with by manufacturing processes that it has acquired either special characteristics which do not properly belong to cotton cloth or a form and individuality which identify the product of such processes as a definite, particular article so far advanced that it is committed to a specific use and is no longer available for the general purposes for which the unprocessed cotton cloth was suitable.

2. COTTON CLOTH PRINTED WITH BEDSPREAD DESIGNS.

   Pieces of cotton cloth 70 to 80 inches wide and 30 yards long, printed with designs about 90 inches long, repeated at regular intervals throughout their length, generally used for making bedspreads by cutting between the designs, but suitable also for making curtains, portières, table spreads, and couch covers, are not dutiable as "articles made from cotton cloth" (par. 266, tariff act of 1913), but as "cotton cloth * * * printed" (par. 252).

United States Court of Customs Appeals, April 19, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7981 (T. D. 36769). [Reversed.]

*Allan R. Brown* for appellant.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument Feb. 9, 1917, by Mr. Brown and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Printed cotton fabrics of various widths and in lengths of about 30 yards, imported at the port of New York and classified by the collector of customs as articles of cotton cloth, were assessed for duty

---

[1] T. D. 37161 (32 Treas. Dec., 438).

at 30 per cent ad valorem under the provisions of paragraph 266 of the tariff act of 1913, which reads as follows:

266. All articles made from cotton cloth, whether finished or unfinished, and all manufactures of cotton or of which cotton is the component material of chief value, not specially provided for in this section, 30 per centum ad valorem.

The importers protested that the goods were not articles made from cotton cloth, but were cotton cloth, dutiable under paragraphs 252 and 253 according to the average number of yarns and the processes of manufacture applied. The parts of paragraphs 252 and 253 upon which the importers rely are as follows:

252. * * * Cotton cloth, when bleached, dyed, colored, stained, painted, printed, woven figured, or mercerized, containing yarn the average number of which does not exceed number nine, 10 per centum ad valorem; exceeding number nine and not exceeding number nineteen, 12½ per centum ad valorem; * * *.

253. The term cotton cloth, or cloth, wherever used in the paragraphs of this schedule, unless otherwise specially provided for, shall be held to include all woven fabrics of cotton, in the piece, whether figured, fancy, or plain, and shall not include any article, finished or unfinished, made from cotton cloth. In the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, the entire fabric and all parts thereof shall be included. * * *

The appraiser, in answer to the protest, reported as follows:

The merchandise consists of woven cotton cloths in various widths and long lengths, having printed thereon designs of tablecloths. Between each design there is sufficient space to cut the cloth into a separate tablecloth. By reason of these designs and the intervening spaces between each one for separation purposes, the cloth in question is commercially unfit for any other use than to be cut into such articles. * * *

At the hearing before the board it appeared from the samples introduced in evidence and the uncontradicted testimony submitted by the importers that the goods were printed woven cotton fabrics having a length of about 30 yards and a width which varied from 70 inches for some of the pieces to 80 inches for others. The design printed on the goods is about 90 inches long and is repeated at regular intervals throughout the length of the goods. The commodity is generally used for the making of bedspreads, which purpose is accomplished by cutting across the fabric between the designs and hemming the raw edges thus produced. The merchandise can be, and to some slight extent is, used for the making of curtains and portières. This is done by severing the cloth at the intervals between the designs, dividing the pieces thus produced into two equal parts, and then scalloping the raw edges. It was established by the importers that the average number of the yarns exceeded number 9 and did not exceed number 19.

The Board of General Appraisers, General Appraiser Cooper dissenting, found that the woven fabrics were cotton bedspreads in the piece and that consequently they must be regarded as unfinished

articles made of cotton.   It was therefore held that the importation was, by virtue of the provisions of paragraph 253, excluded from the operation of paragraph 252, the paragraph claimed by the importers to be applicable, and came strictly within the terms of paragraph 266, the paragraph under which they were assessed for duty.   Accordingly the protest was overruled and the importers appealed.

The articles excluded from paragraph 252 and those which are included in paragraph 266 are finished or unfinished articles made from cotton cloth.   The merchandise is in our opinion cotton cloth, and is not a finished or unfinished article made from cotton cloth.

The goods in issue, as they came from the loom, were, beyond doubt, cotton cloth, and as nothing was done to the cloth after it was woven except to print it, it was certainly within the tariff designation of cotton cloth printed.   As cotton cloth printed is provided for by name in paragraph 252, and as paragraph 253 provides that no article, finished or unfinished, can be considered as cotton cloth, it is evident that Congress did not contemplate that the mere printing of cotton cloth, that is to say, a printing which was not the design of some particular article, should create anything more than a condition of cotton cloth or a cotton cloth advanced.   Certainly it was not intended that such printing by itself should constitute a new article, that is to say, something which was not cotton cloth printed. To hold otherwise would simply result in the absurdity that cotton cloth which had been printed was cotton cloth printed within the meaning of paragraph 252 and at the same time a finished or unfinished article excluded from that paragraph by virtue of paragraph 253.

The board, however, considered that the designs printed on the cloth were so spaced that the cloth was commercially unfit for any purpose other than the making of invididual bedspreads, and that inasmuch as a cutting of the fabric between the designs and a hemming of the edges was all that was required to convert the cloth into finished bedspreads, the goods must be regarded as bedspreads in the piece.   We think the evidence does not justify a finding that the goods are confined to a single use or that they are commercially unfit for any purpose other than the making of bedspreads.   As we read the record, the testimony is very clear that while the goods are used primarily and chiefly for the making of bedspreads, they are nevertheless suitable for the making of curtains and portières and are advertised, offered for sale, and actually used in a minor degree for such purposes.   Indeed, the goods themselves furnish ample evidence that cutting and hemming will just as readily convert them into half curtains, table spreads, and couch covers as into bedspreads, curtains, and portières.

The fact that the designs are of such a size and are so spaced that the cloth may be readily cut into bedspreads does not warrant the conclusion that the designs are the designs of bedspreads or that the cloth can be used for no other purpose, and if it were available for no other purpose it would not *necessarily* follow that it had ceased to be cotton cloth and had become an unfinished article. Cotton cloth may be so woven, dyed, colored, stained, painted, printed, or figured that it is commercially fitted for the manufacture of shirts only, or dresses only, or bagging only, nevertheless such cotton cloth in the piece could scarcely be regarded as unfinished shirts, dresses, or bagging. To become a finished or unfinished article or a manufacture made from cotton cloth or from cotton cloth printed, within the meaning of paragraphs 253 and 266, the cloth, whether in the piece or not, must have been so dealt with by manufacturing processes that it has acquired either special characteristics which do not properly belong to cotton cloth or cotton cloth printed or a form and individuality which identify the product of such processes as a definite, particular article so far advanced that it is committed to a specific use and is no longer available for the general purposes for which the unprocessed cotton cloth or cotton cloth printed was suitable.

We are not unaware of the fact that cotton cloth woven into a series of bandannas, handkerchiefs, scarfs, or mufflers has been held to be wearing apparel, handkerchiefs, neckties, or neckwear made up or manufactured wholly or in part (T. D. 16815); that cotton cloth, having printed thereon designs of bibs or aprons, has been held to be articles of wearing apparel made up or manufactured wholly or in part (T. D. 34243); that cotton cloth woven into a series of Turkish towels, each towel being distinctly marked by the weave, has been held to be dutiable as towels (T. D. 35101); that silk goods so woven and ornamented with a succession of borders as to constitute a series of veils, which though not separated were suitable for no other purpose than their separation into veils by cutting them at the indicated line, have been held to be articles of wearing apparel manufactured in whole or in part (Oppenheimer v. United States, 66 Fed., 52); and that cotton fabrics in running lengths, about one-third of an inch in width, woven for the sole purpose of making coat hangers, and having ridges in the weave about 3 inches apart to indicate the place for cutting into such hangers, has been held not to be tapes but manufactures of cotton. United States v. Buss & Co. (5 Ct. Cust. Appls., 110; T. D. 34138). We note, however, that every one of those cases involved merchandise the manufacture of which had proceeded so far that it either became something more than woven fabrics in the piece or its identity was established as a particular arti-

cle, and therein lies the difference between those cases and this case. There the merchandise in every case was committed to a specific use and was so far advanced that it had an individuality which identified it in its unfinished state as the thing it would be when finished.    Here, however, the cotton fabric is still cotton cloth printed and so printed that it is no more committed to the making of bedspreads than it is to the making of curtains or portières or table spreads or couch covers.    Indeed, looking at the goods in the piece, it can not be said whether they are articles of one kind or another, because potentially they might be any of them.    The merchandise under consideration was cotton cloth when it came from the loom.    Since weaving, the cloth has been subjected to no manufacturing process save that of printing.    The printing of the cloth did not give it the identity of any particular article or so far advance it as to commit it to a specific definite use, and consequently the cloth when printed became cotton cloth printed and nothing more.    In re Mills (56 Fed., 820); Oppenheimer *v.* United States (66 Fed., 52).    We must therefore hold that the importation is neither a manufacture nor a finished or unfinished article made from cotton cloth or cotton cloth printed.

The decision of the Board of General Appraisers is *reversed.*