UNITED STATES *v.* THE HARDING Co. (No. 3667) [1]

United States Court of Customs and Patent Appeals, December 23, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

*William L. Wemple* (*Beardsley & Bradley* of counsel) for appellee.

[Oral argument October 5, 1933, by Mr. Lawrence; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, described on the invoices as "Brake linings 'IBEX,'" imported in bales in running lengths, ranging, according to the report of the appraiser, from 200 to 1,200 feet, and claimed by the importer to be in lengths of about 100 feet, of various widths and thicknesses, was assessed for duty by the collector at the port of New York as manufactures of asbestos yarn at 40 per centum ad valorem under paragraph 1501 (a) of the Tariff Act of 1930.

The sole issue before us, counsel for importer, on the trial below, having waived other claims in the protests, is whether the imported

---

[1] T.D. 46830.

merchandise is dutiable as assessed by the collector, or as parts of automobiles, finished or unfinished, at 25 per centum ad valorem under paragraph 369 (c) of that act, as claimed by the importer.

The pertinent parts of the paragraphs in question read as follows:

PAR. 369. (a) Automobile trucks valued at $1,000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than ten persons, and bodies for such busses, all the foregoing, whether finished or unfinished, 25 per centum ad valorem.

(b) All other automobiles, automobile chassis, and automobile bodies, and motor cycles, all the foregoing, whether finished or unfinished, 10 per centum ad valorem.

(c) Parts (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b), finished or unfinished, not specially provided for, 25 per centum ad valorem.

PAR. 1501. (a) Yarn, slivers, rovings, wick, rope, cord, cloth, tape, and tubing, of asbestos, or of asbestos and any other spinnable fiber, with or without wire, and all manufactures of any of the foregoing, 40 per centum ad valorem.

On the trial in the court below, the witness William A. Harding, sole owner of the Harding Co., appellee, testified that the involved merchandise consisted "of yarn and asbestos and wire" woven together, "saturated with a compound, pressed into shape, and subjected to a certain amount of heat"; that it was imported in running lengths of about 100 feet, and sold in such lengths by appellee to automobile service stations and private repair shops; that it was used, when cut to proper lengths and holes drilled in it "to fit the holes on the shoes for brakes," as brake linings for automobiles; and that it was manufactured and imported in long lengths for purposes of economy. In explaining how it is used, he said:

The material is usually shipped out in the standard 100-foot rolls, and they cut off the lengths required to fit the shoes [brake shoes being of different lengths] of the automobile brakes, and they drill the necessary holes to correspond with the holes that are on the shoes in order to attach the lining to the shoes.

It appears from the testimony of the witness Righter, who testified for the Government, that brake linings, including the involved material, are used for various purposes, such as—

Hoists and winches in industrial machinery, and in connection with oil wells. All types of industrial clutches as well. Also as a dampener or a sound deadener under heavy machinery; and also as a packing between steel flanges, to maintain pressure of steam.

On this record, the court below held that the merchandise consisted of brake linings for automobiles; that it was properly dutiable as parts, finished or unfinished, of automobiles, under paragraph 369 (c), *supra*, and, accordingly, sustained the protests.

It is contended by counsel for the Government that the merchandise, as imported, is not brake linings for automobiles, finished

or unfinished, but a mere material out of which brake linings may be made, and that, therefore, the merchandise is not dutiable as parts of automobiles, as held by the court below.

It is contended by counsel for appellee that as the merchandise is used as brake linings in automobiles, and as brake linings are parts of automobiles, the involved merchandise is dutiable as parts of automobiles, regardless of the fact that such material is used for other purposes. In his brief, counsel for appellee stated that—

In order to apply it to a given automobile, pieces of suitable length are cut from the roll, and holes are punched so as to correspond with the holes in the brake shoe to be lined. The brake is then reassembled and the operation is complete.

In the case of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138, merchandise, consisting of narrow woven cotton strips in running lengths, with cross marks made in the weaving at short intervals to indicate where the merchandise was to be cut in order to produce "coat hangers", was held to be dutiable as a manufacture of cotton under paragraph 332 of the Tariff Act of 1909, as claimed by the importer, rather than as tapes composed of cotton under paragraph 349 of that act, as assessed by the collector. In so holding, the court, among other things, said:

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.* (Italics ours.)

In the case of *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T.D. 37161, it was held that cotton fabrics of various widths, imported in lengths of about 30 yards, adapted, by being cut between printed designs, to be used as bedspreads, curtains, portieres, table spreads, and couch covers, was cotton cloth, printed, rather than articles made from cotton cloth, because, as stated by the court, it was not "*so far advanced that it had an individuality which identified it in its unfinished state as the thing it would be when finished.*" (Italics ours.)

In the case of *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, this court applied the rule announced in the cases of *Buss & Co.*, and *Snow's United States Sample Express Co.*, *supra*, and held that woven figured woolen cloth, imported in running lengths ranging from 40 to 50 meters, not marked to indicate where it was to be cut, adapted, when cut between the designs, to be used as backs and seats for chairs, sofas, and davenports, was a mere material to be

used for covering the backs and seats of furniture, and was not chair backs or seats.   We there said:

> A fabric containing eighteen figures may be cut so as to produce eighteen chair backs, or seats, as the case may be, or it may be cut so as to produce nine sofa backs, or seats, or six davenport backs, or seats.   It appears, therefore, that the "identity of the individual article" *is not* "fixed with certainty."   The woven fabric may be, and is, commercially used for more than one purpose.
> * * *

We think it clearly appears from the record in the case at bar that the imported merchandise, although used, when cut into proper lengths and the necessary holes drilled therein, as brake linings for automobiles, is "commercially capable" of various other uses, such as "hoists and winches," clutches, as packing between steel flanges, and as a "dampener or a sound deadener under heavy machinery." Furthermore, it is not marked to indicate where it is to be cut, for the obvious reason that, even when used as brake linings for automobiles, it must be used in various lengths; accordingly, the identity of the individual articles is not fixed with certainty.

In our opinion, the imported merchandise is not parts, finished or unfinished, of automobiles, but a mere material, "commercially capable" of various uses.  But, even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

We must hold, therefore, that the court below reached the wrong conclusion.

The judgment is *reversed*.