Geo. S. Bush & Co., Inc. *v.* United States (No. 4522) [1]

[1] C. A. D. 338.

United States Court of Customs and Patent Appeals, June 11, 1946

Lawrence, Tuttle & Harper (George R. Tuttle of counsel) for appellant.
Paul P. Rao, Assistant Attorney General (Richard F. Weeks and Sybil Phillips, special attorneys, of counsel), for the United States.

[Oral argument April 3, 1946, by Mr. George R. Tuttle and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges[2]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court (Second Division) holding certain merchandise, consisting of so-called "natural silk gut" or "tegusu," containing no silk, imported into the United States from Japan in individual pieces or in bundles containing 10 or 100 pieces, the pieces being from 5 to 7 feet in length, dutiable as leaders or casts, unfinished, at 55 per centum ad valorem under paragraph 1535 of the Tariff Act of 1930, as assessed by the collector at the port of Seattle, Wash., rather than as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1558 of that act, as claimed by the importer (appellant).

The court also held merchandise, identified in the record as "artificial gut, or artificial tegusu," composed, as stated by the appraiser in answer to appellant's protest, "of raw silk fibers impregnated and covered with what appears to be a casein or cellulose compound * * * imported [into the United States from Japan in lengths of from 10 to 100 yards] in single strand in sizes from one-half to 75-lb. test," and "suited for use and * * * used as fishing line and also as material in the manufacture of fishing leaders," dutiable as a manufacture in chief value of silk at 65 per centum ad valorem under paragraph 1211 of the Tariff Act of 1930, as assessed by the collector at the port of Seattle, rather than as silk, partially manufactured from raw silk if not twisted or spun, at 35 per centum ad valorem under paragraph 1201, or "Thrown silk not advanced more than singles" at 20 per centum ad valorem under paragraph 1203, or as "floss, and silk threads or yarns of any description, made from raw silk, not specially provided for" at 40 per centum ad valorem under paragraph 1204, or as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1558 of that act, as claimed by the importer (appellant).

It is stated in the brief of counsel for appellant that appellant relies principally upon the claim that the so-called "artificial silk gut"

---

[2] GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.

is properly dutiable as thrown silk at 20 per centum ad valorem under paragraph 1203, *supra*.

As to the so-called "natural silk gut" or "tegusu," the competing paragraphs read:

PAR. 1535. Artificial flies, snelled hooks, leaders or casts, finished or unfinished, 55 per centum ad valorem   *   *   *

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

As to the "artificial gut, or artificial tegusu," the competing paragraphs, except paragraph 1558 hereinbefore quoted, so far as pertinent, read:

PAR. 1201. Silk partially manufactured   *   *   *   from raw silk   *   *   * if not twisted or spun, 35 per centum ad valorem.

PAR. 1203. Thrown silk not more advanced than singles, tram, or organzine, 20 per centum ad valorem.

PAR. 1204. Sewing silk, twist, floss, and silk threads or yarns of any description, made from raw silk, not specially provided for, 40 per centum ad valorem.

PAR. 1211. All manufactures, wholly or in chief value of silk, not specially provided for, 65 per centum ad valorem.

It appears from the record, which includes testimony and exhibits introduced in the instant case and the records in the cases of *American Import Co.* v. *United States*, 26 C. C. P. A. (Customs) 72, T. D. 49612, and *United States* v. *Geo. S. Bush & Co.*, 29 C. C. P. A. (Customs) 241, C. A. D. 197, that before the pieces of "natural silk gut" or "tegusu," of which Illustrative Exhibits 1 and 2 are representative, can be used as leaders for fishing lines, a waste portion thereof (approximately 15½ inches in length and clearly distinguishable, being white in color, from the usable portion of the article) must be cut off because it is not sufficiently strong to serve as a portion of the leader, and that after the removal of the white portion the "gut" is soaked in cold water for approximately 20 to 30 minutes to make it sufficiently pliable so that loops may be tied in each end for the purpose of attaching a fishing line to one end and a hook to the other. It further appears from the record that the articles, from which the white portion has been removed and which have been soaked in water and the loops tied in each end, are used, without cutting to length, as finished leaders.

It is contended here by counsel for appellant that the issue as to the proper dutiable status of the so-called "natural silk gut" is controlled by our decision in the case of *American Import Co.* v. *United States*, *supra*, wherein we held that so-called "silk gut," imported in 60-foot lengths, which, when cut to suitable lengths (ranging from 2 to 10 feet) and loops had been tied in the ends of each length, was used

exclusively as fishing leaders, casts, or snells, was not leaders or casts, finished or unfinished, within the purview of paragraph 1535, *supra*, but, on the contrary, was mere material for the making of leaders or casts and dutiable as a manufacture in chief value of silk under paragraph 1211, *supra*.

In the *American Import Co.* case, *supra*, we said, *inter alia:*

> It has long been the generally accepted rule that a thing may be classified for tariff duty purposes under the *eo nomine* provision for the article unfinished if that thing has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone   *   *   *

and, in support of that statement, cited the following cases: *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T. D. 42493; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669; *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798; *Hecht Pearl Co. (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 171, T. D. 44375; *United States* v. *Cohn & Rosenberger, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259.

The so-called "natural silk gut" here in question was imported in individual pieces of from 5 to 7 feet in length, each piece having an unusable portion which was clearly indicated by its color. We are of opinion, therefore, that each piece of the merchandise in question was dedicated to the making of a particular length of leader, which was not true in the *American Import Co.* case, *supra*, and that, to paraphrase a statement contained in the case of *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, the involved articles have been so far advanced that each has attained an individuality which identifies it in its unfinished state as the article it will be when finished. Accordingly, the individual pieces of the involved merchandise are unfinished leaders within the purview of paragraph 1535, *supra*, as held by the trial court.

We come now to a consideration of the dutiable status of the so-called "artificial gut, or artificial tegusu," in chief value of silk, which was imported in lengths of from 10 to 100 yards, the various lengths having different gauges or diameters and test strengths ranging, according to the appraiser's report hereinbefore quoted, from one-half to 75 pounds.

It is conceded by counsel for appellant that the merchandise here in question is identical with that before the court in the case of *United States* v. *Geo. S. Bush & Co.*, *supra*, except as to test strengths. In that case the articles ranged in test strengths from one-half to 150 pounds.

In the *Bush* case, *supra*, the merchandise was assessed as manufactures of silk under paragraph 1211 of the Tariff Act of 1922, which provided for "All manufactures of silk, or of which silk is the com-

ponent material of chief value, not specially provided for, 60 per centum ad valorem," and was claimed by the importer, and held by the trial court, to be dutiable under paragraph 1204 of that act as "silk threads or yarns of any description, made from raw silk, not specially provided for" at $1.50 per pound but not less than 40 per centum ad valorem. Counsel also contended that if the merchandise was not dutiable under paragraph 1204, it was dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1459 of that act.

Paragraph 1204 of the Tariff Act of 1922 read:

Par. 1204. Sewing silk, twist, floss, and silk threads or yarns of any description, made from raw silk, not specially provided for, if in the gum, $1 per pound, but not less than 35 per centum ad valorem; if ungummed, wholly or in part, or if further advanced by any process of manufacture, $1.50 per pound, but not less than 40 per centum ad valorem. In no case shall the duty be assessed on a less number of yards than is marked on the goods as imported.

In the *Bush* case, *supra*, we held that the articles there involved were not dutiable as "silk threads or yarns of any description, made from raw silk, not specially provided for," under paragraph 1204 of the Tariff Act of 1922; that they had been so processed that they were no longer silk yarns or threads, but, on the contrary, were "finished articles dedicated to a new class of uses," that is, "silk fishing lines or silk gut for making fishing leaders, both of which articles, when finished belonged to the same class, having for the most part the same essential characteristics"; and that, therefore, they were dutiable under paragraph 1211 of the act there in question as manufactures of silk. In the course of our decision in that case we stated, in substance, that if the articles there involved had been only so far processed as to fit them for use in the manufacture of unrelated classes of articles, they would not be dutiable as manufactures of silk. It is unnecessary to cite authorities in support of that holding of the court.

It is contended by counsel for appellant in the instant case that evidence, in addition to that presented to the court in the *Bush* case, *supra*, has been submitted which establishes that articles like those here in question are not only used as material in the making of leaders for fishing lines, but, since 1922, have been used as material in the manufacture of surgical sutures and ligatures; that such use is substantial; and that as surgical sutures and ligatures on the one hand and leaders for fishing lines on the other are wholly unrelated commercial articles, the articles in question are not properly classifiable as manufactures of silk under paragraph 1211 of the act here under consideration, as held by the trial court, but, being in chief value of silk and not *eo nomine* provided for, are dutiable alternatively under paragraphs 1201, 1203, or 1204, *supra*, by virtue of the mixed materials clause contained in paragraph 1559 of the Tariff Act of 1930.

The mixed materials clause reads:

and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

The evidence upon which counsel for appellant relies to distinguish the merchandise here involved from that before the court in the case of *United States* v. *Geo. S. Bush & Co.*, *supra*, consists of the testimony of two witnesses: William H. Rundlett (a chemist in the employ of the Jaeger Bigelow Co. from 1922 to 1936, and, since 1936, manager and treasurer of Arthur E. Look, Inc., manufacturer of surgical sutures and ligatures) and Fred Schurer (manager of Jaeger Bigelow Co. from 1924 to 1935, manufacturer of surgical sutures and ligatures, and, since 1935, manager of the F. W. Jaeger Co., also manufacturer of surgical sutures and ligatures).

The witness Rundlett testified that merchandise like Exhibits 5 and 6, which are official samples of the involved artificial gut, was used by the Jaeger Bigelow Co. in the manufacture of surgical sutures and ligatures from 1922 to 1936, at which time he left that company and became associated with Arthur E. Look, Inc.; that such merchandise had been used by the latter company in the manufacture of surgical sutures and ligatures since 1936; that both the Jaeger Bigelow Co. and Arthur E. Look, Inc., imported articles of the type here involved from Japan; and that the surgical sutures and ligatures manufactured by those companies were sold to surgical supply houses, doctors, hospitals, and veterinarians. The witness also identified the short pieces of so-called "silk gut" of various diameters appearing at the bottom of the inside cover of Exhibit 8 (suit No. 4344, *United States* v. *Geo. S. Bush & Co.*, *supra*) which are similar in appearance to the merchandise in question, and stated that "size 3 to and including size 29 * * * would be suitable for sutures or ligatures," and that such sizes have been regularly and commonly used in the manufacture of surgical sutures since 1922. He further stated that in the manufacture of surgical sutures, articles like those here involved are "cut up into various lengths suitable for the doctor's use," dyed, in order to make them "discernable in the tissues," and put up in packages and sterilized. The witness also identified Illustrative Exhibit 13, which, he stated, is a sample of the material used by his company in the making of surgical sutures and ligatures and is similar in appearance and composition to the merchandise in question.

The witness Schurer testified that merchandise like Exhibits 5 and 6, hereinbefore referred to, was used from 1924 to 1935 by the Jaeger Bigelow Co., and from 1935 until about 1938 or 1939, when merchandise was no longer imported from Japan, by the F. W. Jaeger Co. in the manufacture of surgical sutures and ligatures; that both of those companies imported articles of the type here involved from Japan; that after trade relations with Japan had ceased similar merchandise was made in this country and used in the manufacture of surgical sutures and ligatures; that in the manufacture of surgical sutures and ligatures, the material is dyed purple, cut into proper lengths, put into glass tubes or envelopes and sterilized; and that the articles thus manufactured are sold to surgical supply houses and physicians. The witness identified the short pieces of so-called "silk gut" of various diameters appearing at the bottom of the inside page of Exhibit 8 (suit No. 4344, *United States* v. *Geo. S. Bush & Co., supra*), and stated that merchandise of which sizes 3 to 29, inclusive, are representative was commonly used by the Jaeger Bigelow Co. and the F. W. Jaeger Co. in the manufacture of surgical sutures; that merchandise of which Illustrative Exhibit 13 is representative is also used in the manufacture of surgical sutures; and that he had used on an average of from forty to eighty thousand yards of such material a year in the manufacture of surgical sutures and ligatures.

(It may be said at this point that, although the witnesses Rundlett and Schurer testified that Exhibits 5 and 6 and the short pieces of so-called "silk gut" on Exhibit 8, hereinbefore referred to, were in chief value of silk and were composed of the same materials as the merchandise here in question, neither of those witnesses had personally analyzed any of those exhibits. Each testified merely from the appearance of the articles. However, it appears from the report of Henry L. Alves, chief chemist in the United States customs laboratory in San Francisco, that each of the exhibits identified by the witnesses Rundlett and Schurer was in chief value of silk, the other materials being moisture and coating.)

It appears from the record that items 1 to 20, inclusive, and 25 (Exhibit 6) on the invoices are so-called "artificial gut, or artificial tegusu," in chief value of silk, and are within the diameters of the short pieces of silk gut (Nos. 3, 4, 5, 6, 9, 11, 13, 15, 18, 25, and 29) on Exhibit 8, *supra*, which the witnesses Rundlett and Schurer testified were representative of merchandise commonly used in the manufacture of surgical sutures and ligatures. It further appears from the record that item 30 on invoice No. 1819, entry No. 3845, is larger in diameter than the articles which the witnesses Rundlett and Schurer testified were used in the manufacture of surgical sutures and ligatures.

It is evident, therefore, that, although merchandise of which items

1 to 20 and 25 on the invoices are representative is chiefly used as material in the making of leaders for fishing lines, it is also commercially capable of use and is used substantially in the manufacture of an entirely different class of articles—surgical sutures and ligatures. Accordingly, such merchandise is not dedicated to the manufacture of a particular kind or class of articles (fishing lines or fishing leaders) as was the merchandise in the *Bush* case, *supra*, as appeared from the evidence in that case, and, therefore, is not dutiable as a manufacture of silk under paragraph 1211, *supra*. See *Snow's United States Sample Express Co.* v. *United States, supra; A. H. Ringk & Co. et al.* v. *United States, supra; Konishi Kotakudo Co. (Inc.)* v. *United States, supra; United States* v. *Geo. S. Bush & Co., supra.*

Owing to the fact that the merchandise of which items 1 to 20 and 25 on the invoices are representative is not dutiable as a manufacture of silk under paragraph 1211, *supra*, but is a nonenumerated manufactured article in chief value of silk, it is dutiable, if established by the evidence, " at the highest rate at which" it "would be chargeable if composed wholly of" silk, by virtue of the mixed materials clause contained in paragraph 1559, *supra*. See *Cellas (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 237, T. D. 44495.

Although appellant alleged in its protest that the merchandise in question is dutiable alternatively under paragraphs 1201, 1203, or 1204, *supra*, by virtue of the mixed materials clause contained in paragraph 1559, *supra*, or as a nonenumerated manufactured article under paragraph 1558, *supra*, counsel for appellant argue in their brief that in view of the evidence of record the merchandise is not dutiable under the provisions of any of those paragraphs, except the provision contained in paragraph 1203, *supra*, for "Thrown silk not more advanced than singles" at 20 per centum ad valorem.

That contention of counsel is based upon the testimony of Norman Bruck in the case of *United States* v. *Geo. S. Bush & Co., supra* (suit No. 4344).

The witness Bruck testified that he was a member of the firm of Driscoll & Bruck, manufacturers of fishing tackle; that he had seen merchandise like that here under consideration manufactured in Japan; that the slightly twisted silk strands, which, according to his testimony, are coated with a gelatinous composition, are composed of any number, some as many as hundreds, of individual silk fibers in long lengths; that the merchandise in question "commonly known as silk gut is made entirely of silk, thrown silk"; that thrown silk "is a fine silk as it comes off of cocoons of the silk worm"; and that the slightly twisted silk strands are composed of thrown silk. If the silk strands, which, he stated, are composed of thrown silk, have any designation in the trade, the witness did not so state. There is nothing in the testimony of the witness to indicate that the individual

raw silk fibers, taken from the cocoon, are twisted to form so-called "thrown silk."

According to the testimony of Charles J. Evans, "Chief Examiner and U. S. Appraiser, Port of San Francisco," testifying in the case of *United States* v. *Geo. S. Bush & Co.*, *supra*, the filaments of which the silk strands in question are composed are made up of several fibers and have a "hard finish," which, the witness stated, indicates that each individual filament in the strand *"is in its natural condition, and the gum has not been removed."* [Italics not quoted.]

It appears from the summaries of tariff information 1920, page 483, 1921, page 1013, and 1929, page 1750, that thrown silk is known, according to the method of manufacture, as "organzine," "tram," and "singles," and that a thrown silk single is composed of one or more raw silk filaments, *twisted*.

There is no evidence of record to establish that the individual filaments, of which the strands which are the component material in chief value of the merchandise in question are composed, are twisted to form thrown silk.

The witness Grace G. Denny, professor in the Home Economics Department at the University of Washington and an expert in fabrics and yarns, after being shown many exhibits including Exhibit 8, hereinbefore referred to, on which an individual filament and a silk strand composed of several such filaments appear, testified that the silk strand was not "thread, or yarn, in the sense of being twisted. It is not a ply or multiple yarn. It is in the nature of floss because the fibers are parallel and because the slight twist is only the amount of twist that is necessary to hold the filaments together as they come out of the silkworm."

It will be observed that the witness did not state that the *individual filaments had been twisted*, but, on the contrary, stated that the *silk strand composed of the individual filaments was twisted only sufficiently* "to hold the filaments together as they come out of the silkworm." [Italics ours.]

It appears from the Summary of Tariff Information, 1929, at page 1753, that "*Floss silk* generally consists of a large number of singles very slackly twisted." [Italics quoted.]

It would seem to be clear that the term "singles," as used in the quoted excerpt from the Summary of Tariff Information, 1929, does not refer to "thrown singles" as that term is used in paragraph 1203, *supra.*

It will be recalled that the witness Denny did not state that the silk strands were floss, but stated that they were "in the nature of floss."

It is conceded by counsel for appellant that floss is "a variety of embroidery silk," and that neither the strands in question nor the

fibers of which they are composed are "floss" within the meaning of that term as used in paragraph 1204, *supra*.

It is also apparent from the evidence hereinbefore referred to that the silk strands, which are coated with a gelatinous composition, are not silk manufactured.

On the record presented, which to say the least is confusing and incomplete, we are unable to hold that the component material in chief value of the articles in question, which is silk, was intended by the Congress to be covered by the provision of paragraph 1201, 1203, or 1204, *supra*. Accordingly, the involved articles are not dutiable under the provisions of any of those paragraphs by virtue of the mixed materials clause contained in paragraph 1559, *supra*.

We are of opinion that the merchandise of which items 1 to 20 and 25 on the invoices are representative is a nonenumerated manufactured article and dutiable as such at 20 per centum ad valorem under paragraph 1558, *supra*. Owing to the fact that it does not appear from the record that the merchandise represented by item 30 on invoice No. 1819, entry No. 3845, is commercially fit for use and is used in the manufacture of surgical sutures and ligatures, but, according to the record, is used exclusively as fishing lines and as material in the manufacture of fishing leaders, it is dutiable as a manufacture of silk under paragraph 1211, *supra*, as assessed by the collector and as held by the trial court. *United States* v. *Geo. S. Bush & Co., supra*.

For the reasons stated, the judgment of the United States Customs Court is *modified*, being *affirmed* so far as it holds that the so-called "natural silk gut" is dutiable as unfinished leaders under paragraph 1535, *supra*, and that the so-called "artificial gut, or artificial tegusu," represented by item 30 on invoice No. 1819, entry No. 3845, is dutiable as a manufacture of silk under paragraph 1211, *supra*, and *reversed* so far as it holds that the "artificial gut, or artificial tegusu," represented by items 1 to 20 and 25 on the invoices, is dutiable as a manufacture of silk under paragraph 1211, *supra*, and the cause *remanded*, so far as the merchandise represented by items 1 to 20, inclusive, and 25 on the invoices is concerned, for proceedings consistent with the views herein expressed.