(C. D. 1206)

CHARLES F. SORMANI v. UNITED STATES

United States Customs Court, Second Division

(Decided January 30, 1950)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh, Richard F. Weeks*, and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

RAO, Judge: The two protests listed above raise the question of the proper classification of certain lithographically printed pictures, imported in sheets, each sheet consisting of 25 individual pictorial representations. Some of these representations are of winter scenes; others depict Christmas candles, wreaths, and decorations. As

imported, the sheets contain no sharp lines of demarcation of the individual views, but a somewhat smudged black or blue line denotes the place of separation of one picture from another. On the reverse side of each sheet, at what eventually proves to be the bottom left-hand corner of each individual picture, there appear the words "Printed in Switzerland."

The collector of customs at the port of New York classified the instant merchandise pursuant to the provisions of paragraph 1410 of the Tariff Act of 1930, as greeting cards, partly manufactured, without text, title, or other wording, and assessed duty thereon at the rate of 30 per centum ad valorem. It was claimed in the protest that the merchandise was properly dutiable at only 30 cents per pound, as pictures composed wholly or in chief value of paper, lithographically printed, not exceeding twelve one-thousandths of an inch in thickness, as provided for in paragraph 1406 of said act.

The plaintiff who was the only witness herein testified that after importation the individual pictures were cut apart, along the lines of demarcation hereinabove referred to, and used for several different purposes. Some of them were pasted on boxes, such as plaintiff's exhibit 2, which is a pasteboard box designed to contain Christmas greeting cards; others were used to face completed Christmas cards, such as plaintiff's exhibit 3; while still others, after being considerably cut down in size, were affixed to the cover page of the journal of the Swiss Football Club of New York, in the manner represented by plaintiff's exhibit 4. Some of the pictures not disposed of in one of the foregoing ways were sold as prints. The plaintiff stated further that he imported roughly about 5,000 sheets, like exhibit 1, or a total of approximately 125,000 single prints. Of these, about seven to ten thousand were used in the making of greeting cards, 500 were put on the journals, about 3,000 were used on boxes, and about 5,000 were sold as prints. The remaining 90-odd thousand were still on hand.

The witness testified further that when he placed the order for this merchandise, he selected the pictures from photographs he had seen and simply asked for prints.

It was conceded by counsel for the respective parties, that these articles as imported are lithographically printed by one of the processes specified in paragraph 1406 of the Tariff Act of 1930, to wit, they are gelatin-printed, and that they do not exceed twelve one-thousandths of an inch in thickness.

Counsel for the plaintiff contends that even if the testimony showed that the sole and exclusive use of the imported merchandise represented by plaintiff's exhibit 1 were to paste the individual pictures, after cutting, upon greeting cards, that, as imported, the picture is not a card, finished or unfinished. Furthermore, it is urged that the testimony does not show an exclusive or predominant use of the

imported merchandise in greeting cards, but rather that it does establish uses in three different classes of articles, two of which are not described in paragraph 1410 of the Tariff Act of 1930.

Counsel for the Government contends that the imported sheets may be treated as though they were, in fact, imported cut apart into individual pictures; that the provision for greeting cards is a use provision and as such more specific than an *eo nomine* provision; that it is not the use of the particular merchandise under consideration but the use of all merchandise of the same class or kind that controls the classification thereof; and that since there was no proof of such use, the merchandise must be classified as greeting cards, partly manufactured. Furthermore, it is asserted that a visual examination of the pictures, together with the testimony, supports this viewpoint. We do not find ourselves in agreement with the position of the Government.

Paragraph 1410 of the Tariff Act of 1930, insofar as is here pertinent, provides as follows:

* * * greeting cards, valentines, tally cards, place cards, and all other social and gift cards, including folders, booklets and cutouts, or in any other form, wholly or partly manufactured, with greeting, title or other wording, 45 per centum ad valorem; without greeting, title or other wording, 30 per centum ad valorem.

The language appearing in this provision considerably enlarges upon the wording of its prototype in the Tariff Act of 1922, which latter provision was the first specific designation for this type of merchandise. Paragraph 1310 of the earlier act provides for:

* * * greeting cards, and all other social and gift cards, including those in the form of folders and booklets, wholly or partly manufactured, with text or greeting, 45 per centum ad valorem; without text or greeting, 30 per centum ad valorem.

Apparently the change was effected to make the scope of the provision more inclusive, so as to cover, particularly, such cards as valentines, which had been held by this court not to be greeting cards under the 1922 provision (*B. Wilmsen* v. *United States*, 48 Treas. Dec. 786, Abstract 50628), tally and place cards, and to embrace all such cards whether in the form of folders, booklets, cutouts, or in any other form, whether wholly or partly manufactured. But essentially the articles provided for in paragraph 1410, *supra,* must be so far advanced by manufacturing or other processes as to be, in their imported condition, dedicated to use as greeting cards, social, or gift cards, etc., and clearly recognizable as such. Mere material which may ultimately be converted into greeting cards, but which, as imported, is not shown to be dedicated exclusively for that purpose is not, in our opinion, greeting cards, wholly or partly manufactured.

In *American Import Co.* v. *United States*, 26 C. C. P. A. (Customs) 72, T. D. 49612, our appellate court stated (p. 74):

It has long been the generally accepted rule that a thing may be classified for tariff duty purposes under the *eo nomine* provision for the article unfinished if that thing has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone. *Konishi Kotakudo Co.* (*Inc.*) v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; *United States* v. *Cartier* (*Inc.*), 15 Ct. Cust. 334, T. D. 42493; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669; *Hecht Pearl Co.* (*Inc.*) v. *United States*, 18 C. C. P. A. (Customs )171, T. D. 44375; and *United States* v. *Cohn & Rosenberg, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259.

So far as the record in the instant case is concerned, it is established that while the greatest portion of the prints which were actually disposed of was used in the making of Christmas cards, substantial quantities were used to decorate boxes and the covers of a banquet journal. Since neither decorated boxes nor banquet journals would find classification within the pertinent portion of paragraph 1410, *supra*, the use of the prints for those purposes must be considered as of other and different uses or classes of uses than as greeting cards.

To paraphrase a statement contained in *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, for a thing to be classified as an article manufactured wholly or in part, it must be committed to a specific use, and so far advanced that it has an individuality which identifies it in its unfinished state as the thing it will be when finished. See also in this connection, *Geo. S. Bush & Co., Inc.* v. *United States*, 34 C. C. P. A. (Customs) 17, C. A. D. 338. It cannot be said of the merchandise involved herein that, in its imported state, whether it be regarded as sheets of printed matter, or separate and individual pictures, it meets this test. There is nothing to indicate from a mere visual inspection that the prints have been so far manufactured as to attain an individuality which clearly identifies them as greeting cards or other social or gift cards. They are as well suited for a variety of decorative purposes, such as described by the plaintiff, and represented by exhibits 2 and 4, or for calendars, framing, and the like, as they are for affixing to such articles as are encompassed by paragraph 1410, *supra*.

Nor did the Government offer any evidence to rebut plaintiff's proof that these prints were adapted to a variety of uses. Instead, the Government relies upon the presumption of correctness inherent in the collector's classification of the instant merchandise under paragraph 1410, *supra*. In the opinion of the court, plaintiff presented sufficient evidence to rebut the presumption of correctness, and to establish affirmatively that the sheets of lithographic prints, herein

involved, had not been so far manufactured as to be dedicated to use as greeting cards, wholly or partly manufactured.

In view of the foregoing, we hold that the instant merchandise is dutiable at the rate of 30 cents per pound, as pictures composed wholly or in chief value of paper, lithographically printed, not exceeding twelve one-thousandths of an inch in thickness, as provided for in paragraph 1406 of the Tariff Act of 1930. The protests are therefore sustained.

Judgment will be entered accordingly.