(C. D. 462)

Fashion Trimming Corp. et al. *v.* United States

United States Customs Court, Second Division

(Decided April 7, 1941)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: The suits listed in schedule A, hereto attached and made a part hereof, were filed by the plaintiffs seeking to recover certain sums of money alleged to have been illegally exacted as customs duties on certain imported merchandise. Duty was levied on the merchandise at 90 per centum under paragraph 1529 (a) of the act of 1930, as trimmings, in chief value of spangles. The plaintiffs claim the same to be properly dutiable at 20 per centum ad valorem under paragraph 1503 of said act and the Czechoslovakian Trade Agreement, T. D. 49458, or at 35 or 60 per centum under said paragraph 1503.

At the trial of the case a sample of the merchandise was offered and admitted in evidence. This sample is now before us and has been examined and inspected by us. There were also offered and admitted in evidence collective illustrative exhibits A and B as samples of trimmings which have been manufactured in the United States with the use of exhibit 1 and other materials.

One witness, who had been importing and dealing in this merchandise since 1903, testified for the plaintiffs that he had imported between eight hundred thousand and one million yards of the spangle schlung, which is the name the witness applied to the imported merchandise; about 50 per centum of these importations the witness used himself and about 50 per centum he sold at wholesale to trimming manufacturers in the United States; that spangle schlung is the only name by which he has bought and sold the imported merchandise in the United States; that to his knowledge all the spangle schlung he has imported has been used for the purpose of manufacturing into trimmings.

On cross-examination the witness testified that about one-half of 1 per centum of the merchandise in the condition as imported was used for trimmings, but that he had not seen it so used since 1921 or 1922.

Another witness, for 17 years engaged in the manufacture of dress trimmings and hat and millinery braids, testified for the plaintiffs that he had been familiar with merchandise like exhibit 1 in this case for about 12 years; that he had bought it at wholesale, both in this country and abroad, as slung spangles; that during his experience in dealing with merchandise like exhibit 1 he had purchased at wholesale in this country approximately one million five hundred thousand yards of merchandise like exhibit 1 herein, and that during said period he had imported about one hundred thousand yards; that, aside from a few thousand yards of the slung spangles manufactured in the United States, all the slung spangle he had purchased had been manufactured into trimmings.

This witness further testified that, to manufacture trimmings from exhibit 1, the same is put on a netting machine and drawn down through tubes into the machine where it is combined with mercerized cotton warp and tinsel, and the finished articles, collective illustrative exhibit B, come out of the machine; that he had never received an order from the class of trade to whom he sells spangle trimmings like collective illustrative exhibit B for spangle slung in its imported condition like exhibit 1.

On cross-examination this witness testified that while the spangle slung could be attached to a dress by means of a needle and thread, it would not look well, it was too narrow an article, and that it was improbable that it would ever be so used.

The Government offered no testimony to contradict that offered by the plaintiffs.

The merchandise in this case appears to have been slung in very much the same manner as were the beads in the case of *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. 188. In the *Frankel* case, *supra*, this court held the merchandise to be nothing more than mere material to be used in the manufacture of trimmings or other articles of merchandise, and, as such, dutiable as beads at 35 per centum ad valorem. In reversing this court on that point, the appellate court said:

Even if the lower court be correct in its holding that the merchandise is material to be used in the manufacture of a trimming or other articles of merchandise, and is not in and of itself a trimming, it would not be beads, but an article composed in chief value of beads, and would be dutiable at 60 per centum ad valorem under the provisions of paragraph 1403.

This view is sustained not only by an inspection of the sample of the merchandise before us, but by the oral testimony as well. The testimony is that they were invoiced as "Bead Schlung"; that they were known in the trade as "schlung" or "schlung beads," because of the way the merchandise is made; and we think that the testimony fairly shows that the merchandise as imported is used solely either as material for making trimmings, as appellee claims and the lower court held, or for that purpose and for trimmings as well, as the Government claims. Under either contention, the merchandise is more than beads and is an article composed in chief value of beads.

In view of the holding of the appellate court, above quoted, we hold the spangle slung in this case to be an article composed in chief value of spangles, and therefore, more than spangles. The claim of the plaintiffs that the merchandise is dutiable as spangles at 20 per centum ad valorem under said paragraph 1503 and the Czechoslovakian Trade Agreement must be overruled.

Upon the evidence herein, considered in the light of the quoted definitions of "trimmings" in the *Frankel* case, *supra*, we are convinced, and so hold, that the merchandise herein is not a trimming, as classi-- fied by the collector. The merchandise in this case, in the condition imported, is not attached to dresses, etc., for ornamentation or effect, and it therefore does not fall within the definition of "trimming," and should not be so classified.

It is clear from a reading of the decision in the *Frankel* case, *supra*, that our decision was reversed solely by reason of the consideration and weight given by the appellate court to illustrative exhibit A. in that case. This is made apparent by the following quotation from. that decision:

If the oral testimony alone be considered, we should be inclined to sustain the lower court in its finding that the merchandise involved is not in and of itself a. trimming, as classified by the collector, but we must also consider, in determining this question, the exhibits placed in evidence upon the trial and now before us.

Referring specifically to illustrative exhibit A, the appellate court. said:

One of the samples contained in this exhibit appears to be a garment upon which an article similar to that which is here involved has been applied. An examination of the exhibit shows that the article has been attached to the surface of the garment by stitching the same to it. The "schlung beads" are so attached in straight and curved forms, following in part designs upon the garment, and in part forming separate designs. It is apparent that immediately before being applied to the garment they were in the same condition as when imported, except that the length required had been cut from the spool or hank, and the length so cut off is stitched to the garment by use of an additional thread. The "schlung beads" give a raised effect and clearly are purely ornamental. From an inspection of this exhibit we cannot escape the conclusion that when this merchandise is applied to a garment it is a trimming within the common meaning of that word; and as the exhibit was introduced by appellee to illustrate the uses of the merchandise here involved, we must hold that its use upon garments was an ordinary use. * * *

This court has repeatedly held that in classification cases the sample is ofttimes a very potent witness. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls., 353, T. D. 43090; *United States* v. *Bernard Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029.

This evidence, we think, was not given due consideration by the court below and, properly considered in connection with all of the oral testimony, its finding that the merchandise involved is not "trimming" is contrary to the weight of the evidence, and the protest should have been overruled.

In this case the evidence that the imported merchandise is not a trimming is more convincing than in the *Frankel* case, *supra*, and

there is no conflict in the evidence herein, for the reason that the defendant offered no evidence. In this case we have no potent witness in the form of an exhibit such as we had in illustrative exhibit A in the *Frankel* case, *supra*. In this case we have direct, positive oral testimony that the merchandise in its imported condition was not used and was not suitable to be used to attach to dresses, etc., for ornamentation or effect, and this without any contradictory evidence in either the form of oral testimony or an exhibit, such as illustrative exhibit A in the *Frankel* case, *supra*.

The merchandise in this case comes on spools in lengths of from 44 to 400 gross yards. In the case of *Snow's United States Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, it was held by the appellate court that cotton fabrics of various widths, imported in lengths of about 30 yards, adapted, by being cut between printed designs, to be used as bedspreads, curtains, portiers, table spreads, and couch covers were cotton cloth, printed, rather than articles made therefrom, because, as stated by the court, it was not "so far advanced that it had an individuality which identified it in its unfinished state as the thing it would be when finished."

And again in the case of *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, the appellate court applied the rule announced in the cases of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138, and *Snow's United States Express Co.*, *supra*, and held that woven figured woolen cloth, imported in running lengths ranging from 40 to 50 meters, not marked to indicate where it was to be cut, adapted, when cut between the designs, to be used as backs and seats for chairs, sofas, and davenports, was a mere material to be used for covering the backs and seats of furniture, and was not chair backs or seats. We quote the following from that case:

A fabric containing eighteen figures may be cut so as to produce eighteen chair backs, or seats, as the case may be, or it may be cut so as to produce nine sofa backs, or seats, or six davenport backs, or seats. It appears, therefore, that the "identity of the individual article" *is not* "fixed with certainty."

A still later pronouncement by the appellate court on the subject is to be found in the case of *United States* v. *Harding Co.*, 21 C. C. P. A. 307, T. D. 46830. In that case the merchandise consisted of brake linings imported in running lengths, ranging from 200 to 1,200 feet. The question presented there was whether the merchandise was dutiable as manufactures of asbestos yarn, or whether it was dutiable as parts of automobiles, finished or unfinished, it being shown that at least one of the uses for the merchandise was in making brake linings for automobiles. In holding the merchandise to be dutiable as a manufacture of asbestos yarns, the appellate court, among other things, said:

\* \* \* But even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

Obviously on the record in this case, even if it could be said that the merchandise was dedicated to the exclusive use of making trimmings for dresses and other articles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

In the case of *Robinson* v. *United States*, 121 Fed. 204, it was held:

These articles are not in themselves trimmings, and will not become such until they are made into designs to be applied as trimmings, or are made into trimmings as they are applied to articles being trimmed. That they are used for making trimmings does not make them such.

For the reasons stated and following the authorities cited and quoted, we hold the items of merchandise described in schedule A, hereto attached and made a part hereof, to be properly dutiable as articles in chief value of spangles, not ornamented with beads, spangles, or bugles, not embroidered, tamboured, appliqued, or scalloped, and as such dutiable at 60 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as claimed by the plaintiffs.

To the extent indicated the specified claim in said suits is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.