(C. D. 1314)

LOEWENTHAL TRIMMING CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 20, 1951)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge:   The merchandise which is the subject of the protest before us is described on the invoice as "SLUNG (single row of spangled trimmings)."   The record discloses that "schlung" or "slung" is "an old foreign word and it has been used in the trade here for maybe over 100 years" (R. 29).   The words are used interchangeably.   This spangle schlung was classified at the rate of 60 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930 as "*   *   * articles not ornamented with   *   *   * spangles   *   *   * composed wholly or in chief value of spangles."   It is claimed properly

dutiable at 35 per centum ad valorem under the same paragraph of the act as "Spangles * * * not specially provided for." This paragraph (1503) contains a proviso that "the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: * * *."

A sample of this imported schlung was received in evidence as plaintiff's exhibit 1 (R. 7).

The pertinent portions of paragraph 1503, under which the merchandise was classified and likewise claimed to be properly dutiable, read as follows:

PPR. 1503. Spangles and beads * * * not specially provided for, 35 per centum ad valorem; * * * fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, composed wholly or in chief value of spangles * * * 60 per centum ad valorem; * * * *Provided,* That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: * * *.

The record consists of the testimony of one witness on behalf of the plaintiff and two witnesses called by the defendant, together with a number of exhibits. This testimony, as is frequently the case, is conflicting. The president of the plaintiff company, with over 40 years' experience with this firm, which is engaged in the business of importing and manufacturing trimmings, testified that merchandise like exhibit 1 was sold in spools of 1 gross yards each. It was known as "schlung cup sequins" and he had handled "millions of yards" of it (R. 9). He described schlung (exhibit 1) as individual spangles which are put on a string by machine so that their position is fixed. Samples of spangles strung loosely are before us as plaintiff's illustrative exhibit A. The witness stated these were "sequins that are strung" (R. 11). He testified that there was a distinction between spangles, mounted, and spangles, strung, and that the term "mounted" as used in connection with spangles means "a sequence of mounting on a thread by a machine as in Exhibit 1" (R. 14); that the spangles in exhibit 1 are "mounted." He stated that he had never seen spangles mounted in any way other than as they appear in exhibit 1. This schlung (exhibit 1) is used in making other articles such as trimmings by the yard, hair ornaments, and flowers. Samples of such articles were received in evidence (plaintiff's collective exhibit B and illustrative exhibit C).

On cross-examination, this witness testified that he had bought and sold merchandise similar to exhibit 1 as spangles, mounted, but that the material was not invoiced to him as spangles, mounted, and he did not invoice them to his customers as spangles, mounted.

Defendant's witness Messe, in the trimming business for over 50 years, was familiar with schlung like exhibit 1. He had never heard

the term "mounted spangles" or "spangles mounted" (R. 33), nor had he ever bought or sold merchandise like exhibit 1 under that term but had sold it only under the term "slung." He stated that slung (exhibit 1) is an advance step beyond loose spangles (plaintiff's illustrative exhibit A).

On cross-examination the witness testified that the word "slung" probably means by the yard, "trimming by the yard," (R. 37). He stated that he did not call plaintiff's exhibit 1 "mounted" but that "We call it sewed up" (R. 38). He did not recognize the term "strung spangles" at all nor did he recognize the term "spangles mounted" (R. 39).

Defendant's witness Blitzer, employed by a braid manufacturer for over 25 years, testified that his firm made braid from merchandise like exhibit 1 and that it was "slung spangles." He described plaintiff's illustrative exhibit A as "loose" spangles, and plaintiff's collective exhibit B as "trimmings made from slung spangles." This witness also had never heard of "spangles mounted," "mounted spangles," or "spangles strung." He had sold merchandise like plaintiff's exhibit 1 as spangle slung. He had never sold it under any other term. It was agreed by counsel for the respective parties that in the industry, spangles are imported in bulk, as well as loosely strung in the form of plaintiff's illustrative exhibit A (R. 48, 49).

The question for determination is whether the merchandise before us is an article in chief value of spangles, as assessed, or spangles "mounted" as claimed by the plaintiff. The provision that the rates on spangles and beads "shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted" first appeared in paragraph 1503 of the present Tariff Act of 1930. In the Tariff Act of 1897, the provisions of paragraph 408 merely covered beads "not threaded or strung" and it was held by the courts, in construing such provisions, that beads even temporarily or loosely strung were still "threaded or strung" and were excluded from that paragraph. The Tariff Act of 1909, in addition to providing for beads and spangles, not threaded or strung, contained an additional provision for beads or spangles "strung loosely on thread for facility in transportation only" (paragraph 421). These provisions were carried forward into paragraph 333 of the Tariff Act of 1913. Under the Tariff Act of 1922, the provision in paragraph 1403 for spangles and beads contained no words of limitation. The provision therein for imitation pearl beads and for all other beads in imitation of precious or semiprecious stones, however, covered such merchandise if "strung or loose, mounted or unmounted." By the provisions of paragraph 1503 of the Tariff Act of 1930, the provision with respect to "strung or loose, mounted or unmounted" was made applicable not only to imitation pearl beads

or beads in imitation of precious or semiprecious stones, as was the case in the 1922 act, but also to all spangles and beads covered by the paragraph here in question.

The question of the proper dutiable status of bead schlung and spangle schlung has been the subject of prior litigation. In *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. 188, T. D. 44378, our appellate court had before it for review a decision of this court on certain merchandise known as "schlung beads." The merchandise in that case had been classified and assessed for duty as beaded trimmings under paragraph 1430 of the Tariff Act of 1922. The merchandise was bead schlung. It was described by our appellate court as follows:

* * * the merchandise consists of small glass beads, hexagonal in shape, which are strung on a thread; there are also two other threads which go along the outside of each bead and are so connected or crossed between each pair of the beads as to maintain all of them in a fixed and permanent position, equidistantly spaced along the thread. The merchandise, as appears by the record, is imported in the form of spools or hanks, each containing a length of 144 yards of the article in question.

The court added: "There are three threads, only one of which passes through the beads." The above description of *bead schlung* closely parallels the *spangle schlung* before us in the present case. In making the spangle schlung now before us, the spangles or sequins (the terms are used interchangeably) are attached by a machine to a cordlike back by three threads. One of the threads passes through the hole in the center of the spangles. The other two threads are overlapped in such a way as to hold the spangles in a permanent flat position, each spangle overlapping the next one. The cordlike backing apparently is made of paperlike material twisted to form a cord. The finished product is a continuous strip of overlapping spangles wound on spools each spool usually containing 1 gross yards (144 yards) of the schlung.

In the *Frankel* case, *supra*, the issue was between beaded trimmings, as assessed (paragraph 1430, Tariff Act of 1922), and beads, as claimed (paragraph 1403, Tariff Act of 1922). The decision of this court, from which the appeal was taken, held the merchandise, as imported, to be material from which trimmings or other articles were manufactured and that it was not of itself trimming. Our appellate court stated (p. 190):

* * * It is clear to us that this merchandise is more than "beads" or "strung beads." It is an article composed in chief value of beads, intended and designed to be applied, in the condition imported, after cutting to the required length, to some other material for purposes of ornamentation.

The court, from an examination of certain samples in evidence showing how the schlung beads in question were used, held that the said merchandise was a "trimming" as assessed. As heretofore indicated,

the Tariff Act of 1922, under which the *Frankel* case was decided, did not contain the new language now found in paragraph 1503, Tariff Act of 1930. The question of whether or not the beads in the schlung beads in that case were or were not "mounted" was therefore not considered by the court. It is the basis of plaintiff's claim in the case now before us.

The question of the proper classification of spangle schlung, seemingly the same in all material respects as the merchandise in the present case, was before us in *Fashion Trimming Corp. et al.* v. *United States*, 6 Cust. Ct. 199, C. D. 462. The merchandise there was classified as trimmings in chief value of spangles under the provisions of paragraph 1529 (a), Tariff Act of 1930. Among the claims made by the plaintiffs therein was one that the merchandise was properly dutiable as spangles, not specially provided for. This claim was predicated on the proviso appearing for the first time in paragraph 1503, Tariff Act of 1930, which reads:

*Provided*, That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted.

Other claims were made by plaintiffs in their protests, but chief reliance was placed in the provision above set forth.

As in the case at bar, the merchandise in the *Fashion Trimming Corp.* case, *supra*, was spangle slung or schlung, invoiced, bought, and sold under that designation. In its decision this court (Tilson, J.) stated (p. 201):

The merchandise in this case appears to have been slung in very much the same manner as were the beads in the case of *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. 188. In the *Frankel* case, *supra*, this court held the merchandise to be nothing more than mere material to be used in the manufacture of trimmings or other articles of merchandise, and, as such, dutiable as beads at 35 per centum ad valorem. In reversing this court on that point, the appellate court said:

Even if the lower court be correct in its holding that the merchandise is material to be used in the manufacture of a trimming or other articles of merchandise, and is not in and of itself a trimming, *it would not be beads, but an article composed in chief value of beads*, and would be dutiable at 60 per centum ad valorem under the provisions of paragraph 1403. [Italics supplied.]

This view is sustained not only by an inspection of the sample of the merchandise before us, but by the oral testimony as well. The testimony is that they were invoiced as "Bead Schlung"; that they were known in the trade as "schlung" or "schlung beads," because of the way the merchandise is made; and we think that the testimony fairly shows that the merchandise as imported is used solely either as material for making trimmings, as appellee claims and the lower court held, or for that purpose and for trimmings as well, as the Government claims. *Under either contention, the merchandise is more than beads and is an article composed in chief value of beads.* [Italics supplied.]

This court thereupon held (p. 202):

> In view of the holding of the appellate court, above quoted, *we hold the spangle slung in this case to be an article composed in chief value of spangles, and therefore, more than spangles.* The claim of the plaintiffs that the merchandise is dutiable as spangles at 20 per centum ad valorem under said paragraph 1503 and the Czechoslovakian Trade Agreement must be overruled. [Italics supplied.]

On the record in the present case, it appears that the merchandise before us is more than spangles. It is a definite article of commerce with a distinctive name in the trade. The label on the spool in exhibit 1 describes it as "gross-yard slung." It is bought and sold as schlung or slung. No authoritative definition of that term has been called to our attention but it is a word that seems to have been in general use for many years. It is packed on spools and sold in units of gross yards. The weight of the evidence in the record before us supports the defendant's contention that this material is not mounted spangles.

We find the imported merchandise to be more than spangles and to be an article composed wholly or in chief value of spangles and dutiable at 60 per centum ad valorem under paragraph 1503, Tariff Act of 1930, as assessed. The protest is overruled and the classification of the collector is sustained.